| | |
|---|---|
| STATE OF MAINE<br>YORK, ss. | SUPERIOR COURT<br>Civil Action<br>Docket No. |

SEA SALT, LLC, a Maine Limited )
Liability Company with a principal place )
of business in York County, Maine, )
                                        )
             **Plaintiff,**      )
                                        )
       v.                               )    **COMPLAINT AND DEMAND FOR**
                                        )              **JURY TRIAL**
MATTHEW R. BELLEROSE, an )
Individual residing in the City of )
Scarborough, County of Cumberland, and )
State of Maine, )
                                        )
VINCENT J. MASTROPASQUA, an )
Individual residing in the City of Portland, )
County of Cumberland, and State of )
Maine, and )
                                        )
EAST END TRANSPORT, LLC, a )
Maine Limited Liability Company with a )
principal place of business in Cumberland )
County, Maine, )
                                        )
             **Defendants**     )

NOW COMES the Plaintiff, Sea Salt, LLC, by and through undersigned counsel, and hereby complains against Defendants as follows:

## INTRODUCTION

1. This is a civil action for conversion, fraud, breach of fiduciary duty, negligent misrepresentation, breach of contract, and violation of the Maine Uniform Deceptive Trade Practices Act, stemming from Defendants' embezzlement of more than $1,400,000.00 in live lobster product and associated UPS shipping costs from Sea Salt, LLC ("Sea Salt"), over the past eighteen months alone.

1

2. Filed along with this Complaint and specifically incorporated herein by reference is Plaintiff's Motion for Ex Parte Attachment, with supporting affidavits, which set forth the facts of this case in detail.

## THE PARTIES

3. Plaintiff Sea Salt, LLC ("Sea Salt") is a Maine Limited Liability Company engaged in wholesale lobster distribution in the City of Saco, County of York, and State of Maine.

4. Defendant Matthew R. Bellerose ("Bellerose") is an individual residing in the City of Scarborough, County of York, and State of Maine, and a partial owner of Sea Salt.

5. Defendant Vincent J. Mastropasqua ("Mastropasqua") is an individual residing in the City of Portland, County of Cumberland, and State of Maine.

6. Defendant East End Transport, LLC (East End Transport) is a Maine Limited Liability Company with a principal place of business in the City of Scarborough, County of Cumberland, and State of Maine.

## JURISDICTION AND VENUE

7. Jurisdiction and venue are proper in this Court because Plaintiff's principal place of business is in York County, and many of the activities described herein occurred in the County of York and State of Maine.

## BACKGROUND FACTS

8. As set forth in Plaintiff's Motion for Ex Parte Attachment, this is a case of embezzlement from Plaintiff's wholesale lobster distribution company, Sea Salt, LLC, by Defendants using the fictitious business name "Mastro's." The highly detailed facts of this case are described with particularity in the Affidavits of Shawn McEwen, Morey Highbarger, David

Breau, and Michael McKellar. These affidavits establish a longstanding scheme by Defendants to fraudulently divert just under $1.5 million in profits from Sea Salt, by converting a massive amount of Plaintiff's lobster inventory, and reselling it for Defendants' own personal profit.

9. Defendant Matthew R. Bellerose ("Bellerose") abused his role as a trusted business partner and embezzled, along with the other Defendants, **$1,496,427.67** from Sea Salt in the past 18 months alone.

10. In 2017, after 8 years of employment, Defendant Bellerose became a 20% owner of Sea Salt, LLC.

11. Bellerose, along with Defendant Vincent J. Mastropasqua ("Mastropasqua"), are the sole members of Defendant East End Transport, LLC ("East End Transport"), which was the entity that paid the invoices of a fictitious customer called "Mastro's."

12. East End Transport does not have a legitimate business location. Rather, its address is the same as the UPS store located at 201 U.S. Route 1 in Scarborough, Maine.

13. Upon information and belief, the fraudulent activity described in Plaintiff's Motion for Ex Parte Attachment was a joint venture between Bellerose and Mastropasqua, under the sham name "East End Transport," which is why the fictitious customer they created in furtherance of their embezzlement scheme was called "Mastro's."

14. East End Transport paid all of the invoices to "Mastro's" in furtherance of Defendants' fraudulent scheme to embezzle more than $1.4 million from Sea Salt.

15. The address for Mastro's is also the UPS Store located at 201 U.S. Route 1 in Scarborough, Maine.

3

16. Upon information and belief, Bellerose and Mastropasqua are not engaged in any legitimate business activity under the name "East End Transport" aside from their fraudulent scheme to embezzle more than $1.4 million from Sea Salt.

17. Based on documents found on Bellerose's OneDrive folder on Sea Salt's computer system, significant comingling of funds exists by and amongst all of the Defendants, sufficient to justify piercing the corporate veil and holding Bellerose and Mastropasqua personally liable for the conduct described herein.

18. The profits from Defendants' embezzlement and resale of lobster from Sea Salt have been deposited in accounts under the name "East End Transport" or "East End."

19. Further, based on the criminal activity and conspiracy to commit fraud and conversion described below, East End Transport, LLC is merely the alter ego of Bellerose and Mastropasqua, sufficient to justify piercing the corporate veil and holding Bellerose and Mastropasqua personally liable for the conduct described herein.

20. In 2017, Sea Salt discovered that it was showing a substantial loss of product.

21. As a result, the company retained both a forensic accountant and a controller to investigate the source of inventory loss.

22. At all relevant times, Bellerose was the floor manager at Sea Salt and oversaw the order fulfillment and shipping process of lobsters via UPS.

23. To fulfill orders, Bellerose would print a UPS label to affix to the box for shipping. He would then generate a bill of lading for the total amount of lobster shipped to a customer. Bellerose would then create an invoice in Sea Salt's accounting software based on the bill of lading, which included both the cost of the product and the shipping charges.

24. From a bookkeeping perspective, any disparity in the amount of lobster shipped versus the amount of lobster that was actually billed would not be detected as long as the manual bill of lading created by Bellerose matched the invoice he generated.

25. If no bill of lading or invoice was produced, then nobody would be the wiser if inventory was disappearing—at least in the short term.

26. In 2017, Defendant Bellerose purported to bring in a new customer named Mastro's.

27. While Defendant Bellarose did generate some bills of lading and invoices for lobster he shipped to Mastro's, he only did so for a fraction of the product he actually shipped. As set forth in the Affidavit of David Breau, Sea Salt's controller, there is a tremendous disparity in the amount of product actually shipped to Mastro's during the time period summarized for purposes of this Motion (November 24, 2017 through the end of April 2018) and the amount that was invoiced and paid for.

28. In his efforts to uncover the source of this discrepancy, Breau performed a weekly comparison of the legitimate sales and shipping charges to Mastro's, which Bellerose recorded in Sea Salt's Quickbooks program, against UPS shipping records for the same time period.

29. The UPS records showed the actual weight of product sent to Mastro's customers via UPS, most of which was never invoiced by or paid to Sea Salt in Quickbooks.

30. Breau was able to discern that Mastro's has been billed and Sea Salt has collected just over $250,000.00 for lobsters during the relevant time period (between November 2017 and April 2018).

31. By contrast, Breau's investigation of UPS shipping records showed that Defendant Bellerose shipped nearly $1.5 million in product to Mastro's during the same time period.

32. According to Breau's calculations, the irrefutable total loss to Sea Salt between November 2017 and the end of April 2018 was $471,620.57.

33. Averaging that loss over the 22 week period, this amounts to an average weekly loss of $21,437.30.

34. Applying the average weekly theft amount ($21,437.30) to the time period between 1/1/17 and 11/24/17 when the UPS invoices above are summarized for the Court (total of 47 weeks), it is highly likely that Sea Salt sustained a loss of $21,437.30 x 47 = $1,007.553.10.

35. The loss was less dramatic after Sea Salt became suspicious of Bellerose's activity, and began carefully tracking its lobster inventory. In the approximately two months from May to the end of June 2018, when Bellerose was terminated, the loss was only $17,254.00 because Bellerose could not get away with stealing inventory without detection.

36. Putting the above numbers together, Defendants collectively embezzled at least $1,496,427.67 from Sea Salt.[1]

37. When Sea Salt confronted Bellerose with this information, he admitted having stolen from the company.

---

[1] Plaintiff is continuing to investigate the full amount of loss occasioned by Defendants' theft and believe that it likely is more extensive than what has been discovered thus far and is likely in excess of $2,000,000. Breau Aff at ¶ 131.

6

38. In particular, when his business partners raised these irregularities, Defendant Bellerose stated, "I know how this looks. This looks really bad." Highbarger Aff at Exhibit A, p. 11. He pleaded with his partners: "Tell me how to resolve it."

39. Bellerose offered to pay back the money he fraudulently converted to his and the other Defendants' unlawful use, stating: "I gave you the 65 or whatever and I might have 80 or 90. Give me a number and I can, I'll have to chip away at it."

40. When pointedly asked by one of his partners why he did it, Bellerose acknowledged the wrongdoing by asking: "Does it really matter?"

41. Shortly thereafter, Bellerose sent his partners an apologetic text that read: "Guys, I just want to say I'm really sorry. Not only have I betrayed your trust but years of friendship as well and that alone will haunt me forever… I'd like to resolve this as best as I possibly can with you guys without my innocent family having to suffer for my bad decisions."

42. In this same text exchange, Bellerose attempted to explain the embezzlement: "I was just trying to cover the expense of buying my 20% [share of Sea Salt, LLC] as I wouldn't have been able to do it otherwise."

43. Based on these facts and the other information set forth in Plaintiff's Affidavits, Defendants collectively and fraudulently embezzled substantial funds from Plaintiff.

44. The McKellar Affidavit shows that this fraudulent scheme went back as far as 2015, making the likely amount of loss well over $1.5 million and likely in excess of $2 million.

### COUNT I – CONVERSION
### (All Defendants)

45. Plaintiff repeats the allegations contained in Paragraphs 1 through 44 as if fully stated herein.

46. Sea Salt had a valid property interest in its own inventory of live lobster, the income used by Bellerose to pay for shipping costs that were never invoiced to "Mastro's," and profits from the sale of live lobster to Mastro's that were never paid to the company.

47. Defendant Bellerose, along with Defendants East End Transport, LLC and Mastropasqua, converted and misappropriated the property described above for their own use with the specific intent to defraud Sea Salt and its other members, all of whom had the right to possess the property converted.

48. Sea Salt made a demand for return of the property converted by Defendants, which was refused.

49. Defendants engaged in intentionally outrageous conduct, or alternatively consciously disregarded the harm that their conduct would cause Sea Salt, such that malice can be implied, justifying an award of punitive damages.

50. As a result of Defendants' conversion, Sea Salt has suffered economic loss and other harm, justifying an award of compensatory damages in excess of $1.4 million.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court award it damages for conversion, punitive damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to the company by law.

### COUNT II – FRAUD
### (Defendant Bellerose)

51. Plaintiff repeats the allegations contained in Paragraphs 1 through 50 as if fully stated herein.

52. Defendant Bellerose acquired an ownership interest in Sea Salt, LLC that was procured by fraud, with the specific intent to embezzle significant sums of money from the company through a fraudulent lobster shipping scheme.

53. Defendant Bellerose made fraudulent misrepresentations of material facts to Sea Salt, LLC, which he knew to be false, about his role within the company and his method of fulfilling lobster orders for certain fictitious customers, in order to induce justifiable reliance on the part of Sea Salt.

54. Defendant Bellerose's fraudulent misrepresentations to Sea Salt induced them to refrain from checking on his fulfillment of lobster orders, and the UPS shipping process he used while an employee and also a member of the LLC.

55. Sea Salt justifiably relied on Defendant Bellerose's fraudulent misrepresentations to its detriment.

56. Defendant Bellerose's fraudulent conduct was engaged in knowingly and intentionally, justifying an award of punitive damages.

57. Sea Salt has suffered extensive harm and economic loss as a result of the fraudulent embezzlement perpetrated by Defendant Bellerose.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court award it damages for Defendant Bellerose's fraudulent scheme to embezzle money from the company, along with punitive damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to the company by law.

### COUNT III – CIVIL CONSPIRACY
**(Defendants East End Transport and Mastropasqua)**

58. Plaintiff repeats the allegations contained in Paragraphs 1 through 57 as if fully stated herein.

59. Defendants East End Transport, LLC and Vincent J. Mastropasqua acted in concert with Defendant Bellerose to accomplish the fraud and conversion set forth above.

60. All of the Defendants worked together, in concert, with the common goal of accomplishing the fraud and conversion set forth above, for their own financial benefit.

61. Defendants' collective conspiracy to commit fraud, conversion, and theft of Sea Salt's inventory and profits was unlawful under both civil and criminal law.

62. As a result of Defendant East End Transport and Mastropasqua's conspiracy, Sea Salt has suffered extensive damages and economic harm.

63. Defendants acted with actual malice and the specific intent to defraud Sea Salt, justifying an award of punitive damages.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court award it damages for Defendants East End Transport and Mastropasqua's civil conspiracy, along with punitive damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to the company by law.

### COUNT IV – BREACH OF FIDUCIARY DUTY
#### (Defendant Bellerose)

64. Plaintiff repeats the allegations contained in Paragraphs 1 through 63 as if fully stated herein.

65. Sea Salt, LLC is a closely held LLC because it has a small number of members, no ready market for an equity stake in the company, and all of its members are intimately involved in the management, direction, and operations of the LLC.

66. Defendant Bellerose owed Sea Salt, LLC and its members the utmost duty of good faith and loyalty.

67. Defendant Bellerose engaged in significant and longstanding self-dealing, to Sea Salt's detriment.

68. Sea Salt has suffered extensive harm and economic loss as a result of Defendant Bellerose's breach of fiduciary duty.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court award it damages for Defendant Bellerose's fraudulent scheme to embezzle money from the company, along with punitive damages, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to the company by law.

### COUNT V – NEGLIGENT MISREPRESENTATION
### (All Defendants)

69. Plaintiff repeats the allegations contained in Paragraphs 1 through 68 as if fully stated herein.

70. Sea Salt was supplied false information by each of the Defendants: Bellerose, first as an employee and then as a partner/member of the LLC; East End Transport, LLC, as a purported customer and payor of invoices for "Mastro's" shipments of lobster where the true weight and extent of product shipped was falsified; and Mastropasqua as "Mastro's" himself, the purported customer who paid for only a fraction of the product actually shipped by Sea Salt for his personal, financial gain.

71. The above misrepresentations by Defendants were of material facts.

72. None of the Defendants exercised reasonable care or competence in conveying information and representations to Plaintiff about the extent of the weight and product that was being shipped out of Sea Salt under the customer name "Mastro's."

73. Sea Salt justifiably relied on Defendants' misrepresentations, believing "Mastro's" to be a legitimate customer that was paying invoices in a timely and non-fraudulent manner.

74. Sea Salt's justifiable reliance on Defendants' collective negligent misrepresentations has caused it significant economic harm.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court award it damages for Defendants' negligent misrepresentations, along with attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to the company by law.

### COUNT VI – BREACH OF CONTRACT
### (Defendant Bellerose)

75. Plaintiff repeats the allegations contained in Paragraphs 1 through 74 as if fully stated herein.

76. In 2014, Bellerose entered into an employment agreement with Sea Salt whereby he agreed to avoid competing with the company for a period of two months following the separation of his employment.

77. Bellerose furthermore agreed under the employment agreement not to disclose Proprietary information such as customer lists.

78. The agreement between Sea Salt and Bellerose was supported by adequate consideration, and a mutual intent to be bound.

79. The agreement between Sea Salt and Bellerose continued in full force and effect after he became a member of the LLC.

80. Bellerose has breached his agreement with Sea Salt, resulting in actual harm, consequential damages, and economic loss to Plaintiff.

WHEREFORE, Plaintiff Sea Salt, LLC requests that the Court award it damages for Defendant Bellerose's breach of contract, attorney's fees, costs and expenses, interest, equitable and injunctive relief, and all other relief afforded to the company by law.

### COUNT VII – VIOLATION OF 10 M.R.S. § 1211 *et seq.*
### (Maine Uniform Deceptive Trade Practices Act)
### (All Defendants)

81. Plaintiff repeats the allegations contained in Paragraphs 1 through 80 as if fully stated herein.

82. Defendants have collectively engaged in deceptive trade practices within the meaning of the Maine Uniform Deceptive Trade Practices Act ("UDTPA"), 10 M.R.S. § 1211(1), including by:

- Passing off "Mastro's" goods or services as those of Sea Salt;
- Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
- Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
- Disparaging the goods, services or business of Sea Salt by false or misleading representations of fact; and
- Engaging in other conduct that creates a substantial likelihood of confusion or misunderstanding among consumers.

83. Sea Salt is likely to be damaged by the many forms of deceptive trade practices described above, as well as in Plaintiff's Motion for Ex Parte Attachment.

84. Plaintiff is entitled to equitable and injunctive relief against Defendants, including disgorgement of profits and an injunction against further deceptive trade practices, together with attorney's fees and costs of suit, for Defendants' violation of the Maine UDTPA.

## JURY TRIAL DEMAND

Plaintiff Sea Salt, LLC hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Dated at Kennebunk, Maine this 3rd day of August, 2018.

/s/ Laura H. White
Laura H. White, Bar No. 4025
*Attorney for Plaintiff*
BERGEN & PARKINSON, LLC
62 Portland Rd., Suite 25
Kennebunk, ME 04043
(207) 985-7000

14