UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SEA SALT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:18-cv-00413-JAW |
| | ) | |
| MATTHEW BELLEROSE, et al., | ) | |
| | ) | |
| Defendants | ) | |

## ORDER ON MOTION TO COMPEL

In this action, Plaintiff alleges that Defendants participated in a scheme to convert Plaintiff's property.  The matter is before the Court on Defendant Vincent Mastropasqua's motion to compel the production of documents that Plaintiff contends are protected from discovery by the attorney-client privilege.[1] (Motion, ECF No. 106.)

After consideration of the parties' arguments, the Court grants in part Defendant's motion.

## DISCUSSION

Defendant asks the Court to order Plaintiff to provide information and documents disclosed by Plaintiff's counsel to Plaintiff's controller, David Breau, and other employees of Plaintiff who are not members of Sea Salt, LLC.  (Motion at 1.)  Defendant also seeks production of certain documents that Plaintiff's counsel provided to the Federal Bureau of Investigation.  (*Id*. at 4.)

---

[1] The Court authorized Defendant to file the motion to compel. (Order, ECF No. 98.)

## A.  The Attorney-Client Privilege

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).   Additionally, "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable."  *Id.*

The party asserting a privilege to withhold documents responsive to a legitimate discovery request bears the burden of demonstrating the applicability of the privilege.  *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 69 (1st Cir. 2011).  The standard requires "sufficient information to allow the court to rule intelligently on the privilege claim."  *Marx v. Kelly, Hart & Hallman*, *P.C.*, 929 F.2d 8, 12 (1st Cir. 1991).

Federal Rule of Evidence 501 defines, in the first instance, the application and scope of the attorney-client privilege.  The Rule provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
>
> • the United States Constitution;
>
> • a federal statute; or
>
> • rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.  As the Rule reflects, where state law applies to the claim or defense, the privilege would likely be governed by state law.  In this action, which involves a federal question, the parties agree that federal law governs the application of the attorney-client

privilege.  *See Marshall v. Spectrum Med. Grp.*, 198 F.R.D. 1, 2 (D. Me. 2000).  *See also Swidler & Berlin v. United States*, 524 U.S. 399 (1998) (developing the federal common law attorney-client privilege in the context of a motion to quash a federal grand jury subpoena); *Cavallaro v. United States*, 284 F.3d 236, 245 (1st Cir. 2002) (same, motion to quash IRS summons); *Green v. Fulton*, 157 F.R.D. 136, 139 (D. Me. 1994); Fed. R. Evid. 501.

"The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  It is designed to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*  "By safeguarding communications between attorney and client, the privilege encourages disclosures that facilitate the client's compliance with law and better enable him to present legitimate arguments when litigation arises." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 23 (1st Cir. 2011).  Moreover, the attorney-client privilege exists "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, ¶ 18, 742 A.2d 933, 941 (quoting *Upjohn v. United States*, 499 U.S. 383, 390 (1981)).

However, "the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003).  A relatively

narrow construction is appropriate because the privilege "comes with substantial costs and stands as an obstacle of sorts to the search for truth." *Id.*

> The attorney–client privilege applies:
>
> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Cavallaro,* 284 F.3d at 245 (quoting 8 J.H. Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).  As the party invoking the privilege, Plaintiff "must show both that it applies and that it has not been waived." *Lluberes,* 663 F.3d at 24.  Once established, the burden of proving an exception to the rule is placed on the proponent of the exception. *Vicor Corp. v. Vigilant Ins. Co.*, 674 F.3d 1, 17 (1st Cir. 2012).

When examining the circumstances under which the privilege might be waived, the First Circuit noted, "decisions do tend to mark out, although not with perfect consistency, a small circle of 'others' with whom information may be shared without loss of the privilege (e.g., secretaries, interpreters, counsel for a cooperating co-defendant, a parent present when a child consents a lawyer)." *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997).

The First Circuit's observation is consistent with the Supreme Court's reasoning in *Upjohn* where the Court recognized the limitations of a strict application of the "control group" test.  The Court wrote:

> In the corporate context … it will frequently be employees beyond the control group as defined by the court below – "officers and agents … responsible for directing [the company's] actions in response to legal advice"

4

– who will possess the information needed by the corporation's lawyers. Middle-level – and indeed lower-level – employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties.

****

The control group test adopted by the court below thus frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation. The attorney's advice will also frequently be more significant to noncontrol group members than to those who officially sanction the advice, and the control group test makes it more difficult to convey full and frank legal advice to the employees who will put into effect the client corporation's policy.

*Upjohn*, 499 U.S. at 391-92.

"*Upjohn's* legacy is to encourage individualized decisions in keeping with the spirit of Fed. R. Evid. 501 and to encourage a focus, in consideration of the attorney-client privilege in the corporate context, on whether the application of the privilege in the circumstances of a particular case would foster the flow of information to corporate counsel regarding issues about which corporations seek legal advice." *Command Transp., Inc. v. Y.S. Line (USA) Corp.*, 116 F.R.D. 94, 96 (D. Mass. 1987) (footnote omitted).

**B. David Breau**

Plaintiff asserts that although Breau is not one of the four members of Sea Salt, LLC, as controller, he is a primary decisionmaker and in possession of the most extensive knowledge of the facts relevant to this case. Plaintiff argues communications between Breau and counsel are within the scope of the attorney-client privilege. Plaintiff further maintains that the communications are "presumptively privileged" and do not require

detailed disclosure in a privilege log. (Pl. Opp., ECF No. 107 at 4, citing *Neelon v. Krueger*, No. 12-cv-11198-IT, 2015 WL 1037992, at *4 (D. Mass. Mar. 10, 2015).)

Defendant acknowledges that many of the communications between counsel and Breau are likely privileged. Defendant contends, however, that while Breau likely possessed information that Plaintiff's counsel needed to review for purposes of this case, because Breau is an employee and not a member of Sea Salt, LLC, all communications between Plaintiff's counsel and Breau would not be automatically privileged.

As the Court in *Upjohn* explained, strict application of the control group test could frustrate the purposes of the attorney-client privilege. Here, given Breau's position as controller, the nature of Plaintiff's claim, and Breau's knowledge of relevant information important to Plaintiff's claim, Breau can fairly be characterized as one with information that is "needed by corporate counsel if [counsel] is adequately to advise [Plaintiff] with respect to [the claim]. *Upjohn*, 499 U.S. at 391-92. The Court discerns no basis upon which to conclude that Breau's communications with counsel are not within the scope of the privilege. Indeed, the record lacks any reason counsel would have communicated with Breau individually or with Breau together with any of Plaintiff's members except as in connection with this litigation.

To the extent, however, that Defendant has requested, and Plaintiff has declined to produce, documents consisting of communications between and among Breau and members or other employees of Plaintiff, which communications did not include counsel, a privilege log is appropriate.

### C. Other Employees

As to other employees, Plaintiff asserts that other than a single email from Julie Provencher to counsel dated November 7, 2019, Plaintiff is not aware of any communications with counsel "at this time."  (ECF No. 107 at 2.)  Plaintiff is obligated to ascertain whether it has documents responsive to the request and produce the documents unless Plaintiff asserts a privilege regarding the communications.  If a privilege is asserted, a privilege log would be necessary.

### D. Communications Shared with FBI

In response to Defendant's contention that the privilege was waived as to the attorney-client communications Plaintiff shared with the FBI, Plaintiff argues that under Federal Rule of Evidence 502, "disclosure of a communication or information covered by the attorney-client privilege or work-product protection" in a federal proceeding does not automatically result in a broad subject-matter waiver.  Rather, such a disclosure of attorney-client privilege and/or work-product protected material will give rise to a waiver as to undisclosed communications if the following requirements are met:

> (1) the waiver is intentional;
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

Defendant, however, does not argue that Plaintiff has waived the privilege as to any undisclosed communications.  Instead, Defendant contends that any privilege has been waived as to the communications that were shared with the FBI.  The plain language of

Rule 502(a) and the Advisory Committee Notes demonstrate that, contrary to Plaintiff's argument, the Rule does not govern Defendant's request for the disclosed communications. The Advisory Committee Notes provide that "a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Advisory Committee Notes to Fed. R. Evid. 502.

Here, Plaintiff intentionally shared the communications with a third-party.  By disclosing the communications to the FBI, as to the attorney-client privilege, "there is no doubt that [Plaintiff] waived any privilege it might have claimed as to the document itself." *Wadler v. Bio-Rad Labs., Inc*., 212 F. Supp. 3d 829, 851 (N.D. Cal. 2016).  To the extent Plaintiff claims work-product privilege because the communications contain counsel's mental impressions, Plaintiff has not provided any information from which the Court could make such an assessment.  As the party with the burden to establish the applicability of the privilege, Plaintiff's argument thus fails.  Furthermore, while "disclosure of work-product does not necessarily waive the protection, [] disclosing material in a way inconsistent with keeping it from an adversary waives work product protection." *Blattman v. Scaramellino*, 891 F.3d 1, 5 (1st Cir. 2018) (internal citation and quotations omitted).  Disclosure of the information to law enforcement, presumably in connection with a criminal investigation of one or more of the defendants, would be disclosed in a way inconsistent with keeping it

from the defendants insofar as the information would likely be disclosed as part of any criminal proceeding.  Defendant, therefore, is entitled to the documents that comprise the communications Plaintiff shared with the FBI.

CONCLUSION

Based on the foregoing analysis, the Court grants in part Defendant Vincent Mastropasqua's motion to compel. (ECF No. 106.)

The Court further orders:

1. Plaintiff is not required to produce documents that comprise or reflect communications between counsel and David Breau individually or communications between and among counsel, David Breau and members of Sea Salt, LLC.

2. To the extent, however, that Defendant has requested, and Plaintiff has declined to produce, documents consisting of communications between and among Breau and members or other employees of Plaintiff, which communications did not include counsel, within 10 days of the date of this order, Plaintiff shall produce a privilege log for any of the withheld documents.

3. Within 10 days of the date of this order, Plaintiff shall provide a privilege log for any documents, withheld from discovery, that are responsive to Defendant's requests for communications between and among Sea Salt, LLC employees (other than members and David Breau) and counsel.

4.  Within 10 days of the date of this order, Plaintiff shall produce the documents

    that comprise the communications Plaintiff shared with the Federal Bureau of

    Investigation.

## **NOTICE**

Any objections to this order shall be filed in accordance with Federal Rule of Civil Procedure 72.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of May, 2020.